UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

HALLY ASTARTE SWAN,  No. 11-10855

          Debtor(s).
_____/

TIMOTHY W. HOFFMAN, Trustee,

          Plaintiff(s),

    v.  A.P. No. 12-1001

PETER A. LANG, et al.,

          Defendant(s).
_____/

Memorandum After Trial
_____

      In 2004, Chapter 7 debtor Hally Swan and her partner purchased a beautiful parcel of vineyard property near Healdsburg, California. The property had an income-producing vineyard leased to a winery as well as a site where a very nice home could be built. The purchase price was $775,000.00. Swan put down $400,000.00 in cash and financed the remainder with a $375,000.00 loan from

1

defendant North Coast Bank secured by a first deed of trust.

The obligation to the Bank was all due in October, 2008, and extended by agreement until 2009. The Bank recorded a Notice of Default on May 8, 2009, after a sale of the property fell through. Swan, a real estate broker, was working on a deal which would result in a large commission which she thought would allow her to pay the Bank. However, that deal had still not consummated when the Bank noticed a trustee's sale for September 16, 2009.

In some desperation, Swan turned to defendant Peter Lang for advice. Lang was a business acquaintance whom Swan trusted and respected. After listening to her predicament, Lang offered to loan Swan the $24,029.62 necessary to pay past due interest and expenses to the Bank and obtain a postponement of the sale. Swan agreed with Lang's terms that if she could not repay Lang this amount within the postponement time she would deed the property to Lang.

Lang was a shareholder of the Bank and had a close relationship with its president. Based on a phone call, the Bank agreed to facilitate Lang's acquisition of the property from Swan and refinance it after Lang obtained title. As soon as Swan gave him title, Lang used cash on deposit with the Bank in the name of Safari West Inc., a nonprofit entity controlled by Lang, to pay off the Bank in full. The Bank immediately refinanced the property, allowing Lang to repay Safari West. The president of the Bank later left the Bank to become head of Safari West.

The transaction was an extraordinarily good deal for Lang. Not only had he acquired the property for a fraction of its value, but the income from the vineyard lease was more than the debt service to the Bank. Swan filed a Chapter 7 petition on March 10, 2011. On behalf of the bankruptcy estate, plaintiff Timothy Hoffman, the trustee of Swan's bankruptcy estate, argues in this adversary proceeding that he is entitled to avoid the transfer and recover the property as a fraudulent transfer pursuant to § 548(a)(1)(B) of the Bankruptcy Code.[1]

---

[1] Hoffman does not assert that Swan intended to hinder, delay or defraud anyone. Thus, he does not seek recovery pursuant to § 548(a)(1)(A).

2

1     The court regards Lang's argument that he paid reasonable equivalent value in exchange of the
2 property to be completely without merit. The reasonable value of the property was at least
3 $600,000.00 at the time of the transfer, and probably much more. Even Lang's and the Bank's own
4 appraisal, when adjusted with the proper income numbers, was about $550,000.00. Swan testified that
5 the property was worth between $500,000.00 and $600,000.00, and Hoffman produced a credible
6 appraisal at $900,000.00. Such a large difference between the actual value of the property and that
7 paid by Lang compels a finding that Swan transferred the property for less than reasonably equivalent
8 value. 5 **Collier on Bankruptcy** (16th Ed.), ¶ 548.05[2][a], p. 548-69 ["But any large or significant
9 disparity between the market value of what the debtor gave and what the debtor received typically
10 precludes a finding of reasonable equivalence."].
11     Lang's argument that the court must heavily discount the value because foreclosure was
12 imminent is not supported by law. The argument is based on the presumption that if a trustee's sale
13 had occurred the only bid would have been the Bank's, despite the facts that Swan had put
14 $400,000.00 down in cash when she bought the property five years earlier and that the property
15 produced considerable income. Lang is not entitled to such a presumption. If there is an actual
16 foreclosure sale, the price paid by the successful bidder is presumed to have paid reasonably equivalent
17 value if the sale was non-collusive and conducted in accordance with applicable state law. *BFP v.*
18 *Resolution Trust Corp.*, 511 U.S. 531, 533, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). However Lang
19 does not come within this safe harbor. His agreement with Swan, whereby he would loan her
20 $24,029.62 and she would deed him the property if she could not repay him within a month, created an
21 equitable mortgage with no power of sale. Her deed to him effected a strict foreclosure. Without the
22 opportunity for third parties to bid, there was no regular foreclosure sale and no protection from attack
23 under § 548 of the Bankruptcy Code.
24     Although the court easily finds that Lang did not pay anything close to reasonably equivalent

3

1   value for the property, the court must leave him to his own conscience for his treatment of Swan.[2]  It

2   does not appear that the law allows the court to undo the transaction, much as it would like to do so.

3        In order to avoid a fraudulent transfer under the Bankruptcy Code, even if not for reasonably

4   equivalent value, the plaintiff must show either that the debtor was insolvent, or after the transfer was

5   unreasonably under capitalized, or that the debtor intended to incur debts beyond the debtor's ability to

6   pay, or the transfer was to an insider.  The only arguments Hoffman makes to satisfy any of these

7   requirements are the unconvincing arguments, supported only by an accountant who is regularly

8   employed by bankruptcy trustees, that Swan was undercapitalized ( § 548(a)(1)(B)(ii)(II) )and was

9   unable to pay her debts as they became due ( § 548(a)(1)(B)(ii)(III) ).

10       The court rejects the argument under subsection III for the simple reason that the subsection

11  requires a showing of intent by the debtor to incur debts beyond her ability to pay, or at least a belief

12  she would incur such debts.  There was no evidence of such intent or belief.

13       As to subsection II, Swan's only business was acting as a real estate broker.  The court is

14  unconvinced that her remaining property was insufficient for her to conduct this non-capital-intensive

15  business.  While her capital after giving her property away may have been small, her need for capital

16  was smaller.  In order to prevail on this theory, the plaintiff must show inability of the debtor to

17  generate enough cash to sustain operations.  5 **Collier on Bankruptcy** (16th Ed.), ¶ 548.05[3][b], p.

18  548-79.  Hoffman has not made this showing.

19  //

20  //

21  //

---

[2] The court rejects Lang's justification for his conduct that Swan's property would have been lost to foreclosure anyway had he not helped himself to it.  He was well versed in bankruptcy protections, having filed a Chapter 11 himself at one time.  In addition, he could see how very naive Swan was, notwithstanding her occupation as a real estate broker.  A foreclosure sale might well have generated bidders and returned something to Swan.  Lang's "assistance" to Swan insured that she would lose her property to him without any compensation whatsoever.

4

For the foregoing reasons, Hoffman will take nothing by his complaint, which will be dismissed with prejudice. Defendants shall recover their costs of suit.[3]

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for Lang shall submit an appropriate form of judgment forthwith.

Dated: February 4, 2013

Alan Jaroslovsky
U.S. Bankruptcy Judge

---

[3] The court finds that the Ben Zion expert testimony was based on a very flawed view of the law, and this expert attempted to give testimony well outside his area of expertise. Defendants shall not, directly or indirectly, seek recovery of any costs associated with this expert.